UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KRIS BORTNOVSKY and<br>RYAN SHAPIRO,<br><br>      Defendants. | Criminal No. 22-CR-10006 (WGY/MBB) |

**MOTION FOR REVOCATION OF ORDER OF RELEASE AS TO
DEFENDANT KRIS BORTNOVSKY**

      The government moves the Court, pursuant to 18 U.S.C. § 3148(b), to revoke its order releasing defendant Kris Bortnovsky and to detain him pending trial, because there is probable cause to believe that on March 23, 2022, Bortnovsky committed a new federal crime by attempting to intimidate CW-1, a witness with whom the Court ordered Bortnovsky to have no contact as a condition of his release. Video of Bortnovsky's encounter with CW-1 (filed with this motion) also establishes by clear and convincing evidence that Bortnovsky willfully violated the Court's no-contact order. Because Bortnovsky has shown contempt for the Court's no-contact order, the government respectfully submits that there is no condition or combination of conditions of release that will assure that he will not pose a danger to the safety of any other person or the community, and that Bortnovsky is unlikely to abide by any combination of conditions of release. The Court should accordingly enter an order of revocation and detention (or, at a minimum, modify Bortnovsky's conditions to confine him to his residence pending trial).

BACKGROUND

On December 6, 2021, the government charged Bortnovsky by complaint with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, a felony punishable by up to five years in prison. *United States v. Bortnovsky et al.*, 21-MJ-2826-MBB, Docket No. 4.[1] Bortnovsky was arrested in the Southern District of Florida on December 8, 2021. (Docket Entry, December 8, 2021). That day, the Honorable Jacqueline Becerra, a United States Magistrate Judge, released Bortnovsky on a $500,000 personal surety bond, subject to conditions that he not, among other things, "violate any federal, state, or local law while on release in this case." Appearance Bond 21-4308-Becerra ("Bond", Exhibit A hereto, at 1). Judge Becerra further ordered that Bortnovsky "avoid all contact with … witnesses to the crimes charged, except through counsel," and ordered the government to provide defense counsel and pretrial services with the names of all victims and witnesses. (Bond at 2(i)).

Bortnovsky signed the Bond, acknowledging both his responsibilities under it and that "[v]iolation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for [his] arrest, a revocation of release, and order of detention, as provided in 18 U.S.C. § 3148", among other consequences. The Bond expressly advised Bortnovsky that "Title 18 U.S.C. § 1503 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness…," and that "18 U.S.C. § 1512 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to tamper with a

---

[1] The Complaint also charged defendant Ryan Shapiro, who is not a subject of this motion. (Docket No. 4). On January 6, 2022, a Massachusetts grand jury indicted both men on charges that include conspiracy to commit securities fraud, in violation of 18 U.S.C. § 1349 (Count 1), and securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a) (Count 2). (Docket No. 19).

witness, victim, or informant."  (Bond at 5).

The same day, at 10:25 a.m., the government notified Bortnovsky's counsel by email of the identity of witnesses with whom Bortnovsky should not have contact.  (Exhibit B hereto) ("For the avoidance of doubt, here are the names for the no-contact order.").  The first name on the list was that of CW-1.  The government believes that Bortnovsky discussed the no-contact order with his counsel, as counsel for Bortnovsky asked for relief from the no-contact order as to another name that appeared on the list.  (Exhibit C hereto).

*CW-1*

As set forth in the complaint charging Bortnovsky, CW-1 cooperated with the government's investigation into the insider trading scheme.  CW-1, for example, advised the FBI that CW-1 had provided material non-public information to Bortnovsky and Shapiro, in violation of duties of trust and confidence that CW-1 owed to others, so that Bortnovsky and Shapiro could trade on it.  (*E.g.*, Docket No. 4, Complaint Aff, ¶ 20).  CW-1 is likely to testify at trial pursuant to a cooperation agreement.

On March 23, 2022, CW-1 called an FBI agent to advise that at approximately 9:10 that morning, Bortnovsky had walked into the sanctuary of CW-1's Florida synagogue, where CW-1 was participating in morning prayers – as CW-1 generally does six days per week.  Although CW-1 has been a member of that synagogue and a regular participant in its worship services since 2008, CW-1 had never seen Bortnovsky there before.  According to CW-1, Bortnovsky, wearing sunglasses inside the sanctuary, sat across the room from him.  At several points, when CW-1 looked in Bortnovsky's direction, Bortnovsky smirked at CW-1.  CW-1, uncomfortable and himself subject to an order prohibiting his contact with Bortnovsky, left the sanctuary to

report Bortnovsky's presence to building security. Although CW-1 returned to prayer, CW-1 left the sanctuary a few minutes later.

The government has obtained security footage from CW-1's synagogue – an Orthodox congregation. (Exhibit D hereto, proposed to be filed with the Court under seal). The video corroborates what CW-1 reported to the FBI: namely, that Bortnovsky, wearing sunglasses, entered the synagogue's sanctuary at just before 9:10 a.m., 3 minutes after CW-1 arrived.



Approximately 20 worshippers are seen engaged in morning prayers.  Bortnovsky was the only person in the room not wearing a head covering, a prayer shawl, or phylacteries.[2]



(A worshipper can later be seen giving Bortnovsky a head covering).

Bortnovsky sat across the room, in CW-1's line of sight, and stayed there for less than 10 minutes.  At approximately 9:14 a.m., Bortnovsky can be seen on Exhibit D noting the presence of a member of the synagogue's security team, who entered the sanctuary after being approached by CW-1.  At approximately 9:17 a.m., Bortnovsky can be seen watching CW-1 leave the service.  Bortnovsky himself left the sanctuary just 1 minute and 10 seconds later.  Representatives of CW-1's synagogue have advised the government that while all are welcome at morning prayers, Bortnovsky is not a member of the congregation.  Security camera footage

---

[2]Phylacteries are a set of small leather boxes containing Hebrew texts on vellum, worn with leather straps by Jewish adults at morning prayer as a reminder to keep the law.

from outside the synagogue indicates that Bortnovsky lingered on the corner for approximately four minutes before leaving when it began to rain.

## ARGUMENT

Under 18 U.S.C. § 3148(b), "probable cause" to believe that a person has committed a Federal, State, or local crime while on release creates a rebuttable presumption that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.  United States v. Alfonso, 284 F.Supp.2d 193, 202 (D. Mass. 2003) (Young, J.).

Here, Bortnovsky cannot rebut the statutory presumption.  The video evidence of Bortnovsky's attendance at CW-1's morning prayers – a singular event in CW-1's memory, as corroborated by synagogue officials – demonstrates clearly and convincingly that Bortnovsky sought out CW-1 in violation of the Court's order, and with the intent of intimidating CW-1, in violation of either 18 U.S.C. § 1503 (prohibiting corrupt influence of the due administration of justice) or § 1512(b) (prohibiting the use of intimidation to influence the testimony of any person).  There is simply no other explanation for Bortnovsky's presence in an Orthodox synagogue at a mid-week service attended by only a small number of highly observant synagogue members.

It is difficult to imagine conditions that would assure CW-1's safety, or conditions that Bortnovksy would follow, given his brazen contempt for the Court's no-contact order and its warnings to him contained within the Bond.

## CONCLUSION

The Court should find that there is probable cause to believe that Bortnovsky, while on release, committed federal crimes – including obstruction of justice and witness intimidation –

and that he violated his conditions of release by seeking unauthorized contact with CW-1. The Court should further find that there is no condition or combination of conditions that will assure that Bortnovsky will not pose a danger to the safety of any other person or the community, and that he is unlikely to abide by any new conditions that the Court might order. The Court should accordingly enter an order of revocation and detention.

Alternatively, the government respectfully requests that the Court order him confined to his residence and subject to GPS monitoring pending trial. The defendant was already subject to a no-contact order that expressly prohibited contact with CW-1, so another order requiring him to stay away from CW-1 (or CW-1's place of worship) would not offer any meaningful protection to CW-1.

        Respectfully submitted,

        RACHAEL S. ROLLINS
        UNITED STATES ATTORNEY

        By: */s/ Seth B. Kosto*
        SETH B. KOSTO
        STEPHEN E. FRANK
        Assistant U.S. Attorneys

March 25, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, the foregoing document filed through the ECF system will be sent electronically to counsel for Defendant, who is a registered participant as identified on the Notice of Electronic Filing (NEF).

*/s/ Seth B. Kosto*
SETH B. KOSTO
Assistant United States Attorney

March 25, 2022